UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
JANE DOE,                          )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )   C.A. No. 23-487 WES
                                   )
MARRIOTT HOTEL SERVICES, LLC       )
                                   )
        Defendant.                 )
_____)

## MEMORANDUM AND ORDER

WILLIAM E. SMITH, District Judge.

　　Plaintiff Jane Doe seeks redress from her former employer – Defendant Marriott Hotel Services, LLC ("Marriott") - after her work supervisor allegedly sexually assaulted her.  Marriott now moves to dismiss Ms. Doe's clams for negligent hiring, training, and supervision.  Specifically, Marriott asserts that Ms. Doe cannot establish negligence claims because the alleged assault occurred outside of work and was committed by an employee with no prior record of violence.  See Def.'s Partial Mot. Dismiss, ECF No. 7; Def.'s Mem. Law Supp. Partial Mot. Dismiss First Am. Compl. ("Def.'s Mem") 5-12, ECF No. 8.  For the reasons below, the Court GRANTS IN PART and DENIES IN PART Marriott's Motion.

## I. BACKGROUND[1]

This case arises from Ms. Doe's allegation that F.B., a senior Marriott employee who served as her direct supervisor, sexually assaulted her at a social gathering following her shift at the Newport Marriott. Approximately twenty years before the alleged assault, Marriott hired F.B. to work as a front desk agent at Marriott's hotel in Newport, Rhode Island. First Am. Compl. ("FAC") ¶ 11, ECF No. 6. During his tenure, F.B. sexually harassed a housekeeper, which resulted in Marriott asking for his resignation. Id. ¶¶ 12-14. Sometime after his resignation, Marriott hired F.B. at the Patriots' Place Marriott. Id. ¶ 15. F.B. again sexually harassed a housekeeper, causing Marriott to again request his resignation. Id. ¶¶ 16-17.

Despite those incidents, in May 2021, Marriott rehired F.B. to serve in a supervisory role as the Newport Marriott's Director of Rooms. Id. ¶ 18. In making that decision, Marriott assumed that F.B. had "grown up" since his previous resignation. Id. ¶¶ 18-19. Marriott did not train F.B. or take any other steps to ensure that he would not continue to act inappropriately toward female employees and guests. Id. ¶¶ 58-59.

---

[1] The Court assumes that Ms. Doe's factual allegations are true for the purpose of assessing Marriott's Motion to Dismiss. See Pemental v. Sedgwick Claims Mgmt. Sys., Inc., No. CA 14-45-M, 2014 WL 2048279, at *1 n.2 (D.R.I. May 19, 2014) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

During that same period, Marriott hired Ms. Doe to work the front desk at the Newport Marriott. Id. ¶ 5. Ms. Doe reported directly to F.B. Id. ¶ 6. During her tenure, F.B. acted inappropriately toward Ms. Doe – who was twenty years his junior – including telling her about his extra-marital affairs and heavy drinking, frequently asking her to get drinks, and regularly touching her. Id. ¶¶ 21-22, 24. Ms. Doe consistently rebuffed F.B.'s advances and reported his troubling conduct to her coworkers. Id. ¶¶ 23, 25. Nonetheless, because F.B. was her supervisor, Ms. Doe still had to regularly interact and work closely with him. Id. ¶ 23.

On March 24, 2022, F.B. invited Ms. Doe and several other Marriott employees, including Marriott's Director of Food and Beverage ("D.S."), to a restaurant after work to celebrate his birthday. Id. ¶¶ 28-30. Ms. Doe, whose shift extended into the late evening, joined F.B. and the other employees at a bar after they had concluded dinner. Id. ¶¶ 28-29. Almost immediately after Ms. Doe sat down at the table, F.B. suggested that Ms. Doe kiss another employee, D.S. She refused. Id. ¶ 31.

Later in the evening, Ms. Doe lost consciousness at the bar. Id. ¶ 32. Ms. Doe briefly regained consciousness to a harrowing sight – F.B. was raping her in her own bed. Id. ¶ 33. When she fully awoke the next morning, she found F.B., who was very intoxicated, still in her bed. Id. Ms. Doe reported the incident

3

to Marriott executives, and following an investigation, Marriott terminated F.B. in April 2022.[2]  Id. ¶¶ 35-37.

Approximately a year and a half after the assault, Ms. Doe commenced this action, asserting claims against Marriott under Rhode Island law for negligent hiring, supervision, and training.[3] She alleges that Marriott acted negligently by rehiring F.B., who it knew to be a heavy drinker with a track record of sexually harassing female employees.  Id. ¶¶ 52-57.  She further avers that, once Marriott rehired F.B., it failed to adequately supervise and train him by not taking steps to ensure that F.B. was not a threat to coworkers.  Id. ¶¶ 58-59.

## II. LEGAL STANDARD

Motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) test the plausibility of the claims in a plaintiff's complaint.  Spino v. Rushmore Loan Mgmt. Servs, LLC, 606 F. Supp. 3d 1, 2 (D.R.I. 2022).  To survive such a motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Said differently, the

---

[2] The State of Rhode Island later charged F.B. with first degree sexual assault. First Am. Compl. ("FAC") ¶ 45, ECF No. 6.

[3] Ms. Doe also asserts claims under the Rhode Island Civil Rights Act.  FAC ¶¶ 64-80.  Marriott does not move for dismissal of those claims.

4

complaint's allegations "need not demonstrate that she is likely to prevail, but her claim must suggest more than a sheer possibility that a defendant has acted unlawfully." DiCristoforo v. Fertility Solutions, P.C., 521 F. Supp. 3d 153, 155 (D.R.I. 2021) (quoting Garcia-Catalan v. United States, 734 F.3d 100, 102-03 (1st Cir. 2013)).

The Court applies a two-step inquiry to test the plausibility of the claims at issue. Garcia-Catalan, 734 F.3d at 103. The first "distinguishes 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). The second assesses "whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)). In making its determination, the Court must "indulg[e] all reasonable inferences in the plaintiff's favor." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

### III. ANALYSIS[4]

Marriott moves to dismiss Ms. Doe's negligence claims on the grounds that it did not owe a duty to Ms. Doe and that its

---

[4] Because this is a diversity case, the Court applies Rhode Island state law. See Baum-Holland v. Hilton El Con Mgmt., LLC, 964 F.3d 77, 87 (1st Cir. 2020).

5

negligence was not the proximate cause of Ms. Doe's injuries. Def.'s Mem. 5-12. First, Marriott contends that Ms. Doe does not present sufficient allegations to establish claims for negligent hiring and supervision. Id. at 4-5. Second, Marriott asserts that its duties to adequately hire, train, and supervise do not extend to a sexual assault that occurred outside of work hours and was unrelated to its business. Id. at 5-6. Third, it contends that it did not owe a duty to Ms. Doe because, without any prior record of violence by F.B., it was not reasonably foreseeable that F.B. would act violently toward a coworker. Id. at 9-12. Lastly, Marriott avers that its alleged negligence was not the proximate cause of Ms. Doe's injuries. Id. at 9-12; Def.'s Reply 5-7, ECF No. 16.

For the reasons below, Ms. Doe states viable claims for negligent hiring and supervision but not for negligent training.

### A. Threshold Factual Allegations Regarding Negligent Supervision and Training

At the outset, the Court addresses whether Ms. Doe asserts sufficient factual allegations to state claims for negligent supervision and training.[5] Under Rhode Island law, negligent supervision and training claims are "premised on an employer

---

[5] Marriott does not challenge the adequacy of the factual allegations related to Ms. Doe's claim for negligent hiring. See Def.'s Mem. Law Supp. Partial Mot. Dismiss ("Def.'s Mem.") 4, ECF No. 8.

6

failing to provide training and/or supervision that a reasonably prudent employer in the same field would have similarly offered its personnel." McLaughlin v. deMedeiros, 613 F. Supp. 3d 547, 558 (D.R.I. 2020), aff'd in part, vacated in part on other grounds sub. nom, McLaughlin v. Tiverton Town Council, 834 F. App'x 598 (1st Cir. 2021). The claims stem from an employer's duty "to retain in its service only those employees who are fit and competent." Liu v. Striuli, 36 F. Supp. 2d 452, 456 (D.R.I. 1999 (quoting Welsh Mfg. v. Pinkerton's Inc., 474 A.2d 436, 440 (R.I. 1984)).

To support her negligent supervision claim, Ms. Doe alleges that Marriott, in rehiring a supervising employee who it knew had a history of sexual harassment, did not take steps to ensure that he was not a threat to his subordinates. FAC ¶ 59. Ms. Doe further alleges that F.B. regularly sexually harassed and touched her in the workplace. Id. ¶¶ 21-23. In taking all reasonable inferences in Ms. Doe's favor, the Court finds that such allegations establish a negligent supervision claim, as Marriott did not take steps to prevent or monitor F.B.'s conduct despite his prior record of sexually harassing female colleagues. See id. ¶¶ 21-23, 59. Moreover, a plausible inference can be made that, had Marriott properly supervised F.B., his wrongful conduct in the workplace would have placed Marriott on notice that he presented a danger to Marriott's other employees.

7

Conversely, Ms. Doe fails to state a claim for negligent training. Ms. Doe alleges that Marriott did not train F.B. to comply with company policies and applicable laws regarding sexual harassment. Id. ¶ 58. That conclusory allegation, however, does not provide how the training was deficient or how adequate training would have prevented the alleged sexual assault. See Algarin v. Cent. Falls Det. Facility Corp., No. 10-370-S, 2011 U.S. Dist. LEXIS 66077, at *12-13 (D.R.I. June 20, 2011). Further, the Court rejects Ms. Doe's assertion that she need not provide more detailed allegations at this stage of the proceedings. See Mem. Law Supp. Pl.'s Opp'n Partial Mot. Dismiss FAC 15-16, ECF No. 12-1; see also Doe v. Alsaud, 12 F. Supp. 3d 674, 683 (S.D.N.Y. 2014) (noting that courts regularly dismiss employment claims before discovery when they provide insufficient allegations).

Accordingly, the Court dismisses without prejudice Ms. Doe's claim for negligent training.[6]

### B. Ms. Doe May Assert Negligence Claims Against Marriott Based on F.B.'s Out-of-Work Conduct

The Rhode Island Supreme Court recognizes claims for negligent hiring and supervision when third parties are injured by an employer's incompetent or unfit employees. Welsh, 474 A.2d at 440. Under such claims, employers owe a duty to third parties

---

[6] If discovery reveals a more detailed factual basis for a negligent training allegation, Plaintiff may amend the Complaint.

8

"who may reasonably be expected to come into contact with [its] employees." Liu, 36 F. Supp. 2d at 467. The claims offer an alternative form of liability to the doctrine of respondeat superior, in that they create causes of action for wrongful conduct that employees commit outside the scope of their employment. Welsh, 474 A.2d at 439-40.

The duties to adequately hire and supervise require an employer to reasonably ensure that an employee does not endanger its customers and other employees. It is long settled that an employer that "employs a vicious person to do an act which necessarily brings him in contact with others while in the performance of a duty . . . is subject to liability for harm caused by the vicious propensity." Restatement (Second) Agency § 213 cmt. d (1958).[7] Accordingly, Marriott owed Ms. Doe a duty to adequately hire and supervise F.B., as Marriott brought him into contact with Ms. Doe by making him her colleague and supervisor. See Liu, 36 F. Supp. 2d at 467 (holding that a college owed its students a duty to employ faculty "who are not reasonably foreseen to be dangers to the well-being of the student body"); Lewis v. Bellows Falls Congregation of Jehovah's Witnesses, 95 F. Supp. 3d 762, 767 (D. Vt. 2015) (stating that a congregation could be liable

---

[7] The Rhode Supreme Court acknowledged that "[o]ur recognition of direct employer liability for its negligence is consistent with § 213 of the Restatement (Second) Agency (1958)." Welsh Mfg. v. Pinkerton's, Inc., 474 A.2d 436, 440 (R.I. 1984).

9

for bringing a ministerial servant who it knew to be dangerous in contact with an underage church member).

It is of no moment that the sexual assault occurred away from the workplace and outside work hours. Under Rhode Island law, employers may be liable for torts that employees commit outside the scope of their employment, so long as the employer has reason to know of the employee's particular unfitness or dangerous attributes and that such qualities create a foreseeable risk of harm to third parties who may reasonably be expected to encounter the employee as a result of the employment. See Favorito v. Pannell, 27 F.3d 716, 719-20 (1st Cir. 1994) (applying Rhode Island law). The Rhode Island Supreme Court has stated that such claims "provide[] a remedy to injured third parties who would otherwise be foreclosed from recovery under the master-servant doctrine since the wrongful acts of employees in these cases <u>are likely to be outside the scope of employment or not in furtherance of the master's business</u>." Welsh, 474 A.2d at 439 (emphasis added). Therefore, the Rhode Island Supreme Court recognizes an employer's duty in circumstances such as those alleged here, where the employer's negligence enabled a dangerous or unfit employee's tortious act, even if the tortious act occurred away from the workplace or outside the employer's control.[8]

---

[8] Indeed, the case that the Welsh court principally relied upon supports such a finding. See Di Cosala v. Kay, 450 A.2d 508,

Marriott, nonetheless, cites cases dismissing negligence claims where the harmful conduct occurred outside the employer's control. See Def.'s Mem. 6-9. The governing state law in those cases required a showing that the employee committed the at-issue tort either on the employer's premises or with the employer's chattels. See, e.g., Anderson v. Adam's Mark Hotels & Resorts, 211 F.3d 1277 (table) (10th Cir. 2000); Doe v. Abdulaziz Bin Fahd Alsaud, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014); see also Friend v. Adams Cnty. Sheriff, No. 1:17-CV-00766, 2019 WL 2502710, at *2 (S.D. Ohio June 17, 2019) (requiring the tortious act to occur while the employee is "on the clock"). Those requirements stem from Restatement (Second) of Torts § 317, which addresses when a master is liable to control his servant while acting outside the scope of his employment.

Marriott's citations miss the mark. The Rhode Island Supreme Court has never recognized this limitation on negligent hiring and supervision claims. The court has solely adopted Restatement (Second) of Agency § 213, which does not include a premises or

---

516 (N.J. 1982) ("The error in the trial court's approach lies in its assumption that the extent of the duty owed by the negligent employer was limited to situations within the scope of the employment of the employees."); see also Welsh, 474 A.2d at 439 ("When an employer neglects this duty and as a result injury is occasioned to a third person, the employer may be liable even though the injury was brought about by the willful act of the employee beyond the scope of his employment." (quoting Di Cosala, 450 A.2d at 515)).

11

chattel element. Welsh, 474 A.2d at 440; see Favorito, 27 F.3d at 719 (describing when employers are liable under Rhode Island law for employee torts committed outside the scope of employment). As a result, this Court will refrain from imposing such a limitation on Ms. Doe's negligence claims. See Lewis, 95 F. Supp. 3d at 767 (noting that cases with a premises element were not applicable because the Vermont Supreme Court adopted Restatement (Second) of Agency § 213).

Accordingly, Ms. Doe states claims for negligent hiring and negligent supervision under Rhode Island law based on the alleged actions that F.B. took outside of work hours and away from the employer's premises.

### C. Marriott's Duty of Care to Adequately Hire and Supervise Encompasses F.B.'s Alleged Conduct

The existence of a legal duty presents a question of law that only the Court may decide. Volpe v. Gallagher, 821 A.2d 699, 705 (R.I. 2003). Because there is "no clear-cut formula" for determining whether a duty is present, Rhode Island courts apply "an ad hoc approach that 'turns on the particular facts and circumstances of a given case.'" Gushlaw v. Milner, 42 A.3d 1245, 1256 (R.I. 2012) (first quoting Santana v. Rainbow Cleaners, 969 A.2d 653, 664 (R.I. 2009); and then quoting Ouch v. Khea, 963 A.2d 630, 633 (R.I. 2009)). That practice requires the consideration of five factors:

> (1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that the plaintiff suffered an injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach.

Id. at 1256-57 (quoting Ferreira v. Strack, 652 A.2d 965, 967-68 (R.I. 1995)). Additionally, the Court must assess whether there is a special relationship between the parties "that warrants the imposition of a duty to control the conduct of the third party." Doe v. R.I. Sch. of Design, 432 F. Supp. 3d 35, 41 (D.R.I. 2019).

The Court centers its analysis on foreseeability, as it is the sole factor that Marriott addresses. See Def.'s Mem. 9-12; Reply 5-7. Although not dispositive, the foreseeability factor "is the linchpin in determining the existence of any duty." R.I. Sch. of Design, 432 F. Supp. 3d at 44 (quoting Mu v. Omni Hotels Mgmt. Corp., 882 F.3d 1, 6 (1st Cir. 2018)). In assessing foreseeability, the Court "considers generally whether 'the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed on the negligent party.'" Martin v. Marciano, 871 A.2d 911, 917 (R.I. 2005) (quoting Banks v. Bowen's Landing Corp., 522 A.2d 1222, 1226-27 (R.I. 1987)).

The Court finds that, in the context of determining a duty, it is reasonably foreseeable that a hotel employee could become

13

the victim of sexual assault if Marriott failed to exercise due care in hiring and supervising an employee with the history of F.B. As discussed, the Rhode Island Supreme Court has recognized that employers have a duty to ensure that their employees do not present a danger to third parties with whom they will come in contact as part of their employment. See Welsh, 474 A.2d at 440. Inherent in that principle is the understanding that an employer's negligence in hiring, supervising, and training unfit or dangerous employees could foreseeably result in severe harm to others, including to its own employees. See id.; see also Firmin v. City of Boston, No. 19-CV-12158-ADB, 2021 WL 352376, at *6 (D. Mass. Feb. 2, 2021) (holding that it was foreseeable that a city's failure to train police officers on the proper use of force would cause harm to third parties). In fact, the risk of foreseeable injury intensifies when the employer's negligence involves a supervisor who may exert control over other employees. See Anicich v. Home Depot U.S.A., Inc., 852 F.3d 643, 651-52 (7th Cir. 2017) (holding that employer could be held liable for negligence when its supervisor allegedly used his supervisory authority to harm a subordinate employee).

Marriott contends that the alleged sexual assault was not reasonably foreseeable as a matter of law because F.B. had no prior record of violent conduct. Def.'s Mem. 12. Marriott, nonetheless, conflates the frameworks for assessing foreseeability. Unlike the

14

proximate cause inquiry, which addresses "whether a particular plaintiff's injuries were reasonably foreseeable in light of a particular defendant's conduct," a court determining foreseeability in the context of duty focuses on whether the "category of negligent conduct is sufficiently likely to cause the kind of harm experienced." Banks, 522 A.2d at 1226-27 (emphasis omitted) (quoting Ballard v. Uribe, 715 P.2d 624, 628 n.6 (Cal. 1986)); see also Goldsberry v. Grubbs, 672 N.E.2d 475, 479 (Ind. Ct. App. 1996) ("[T]he foreseeability component of proximate cause requires an evaluation of the facts of the actual occurrence, while the foreseeability component of duty requires a more general analysis of the broad type of plaintiff and harm involved, without regard to the facts of the actual occurrence."). Therefore, F.B.'s prior record is of no import in the Court's duty analysis.[9]

Most of the remaining factors in the duty analysis also weigh in favor of an existing duty.[10] First, Ms. Doe alleges that

---

[9] Marriott relies on cases that either address foreseeability in the context of proximate cause or apply state law that requires prior knowledge of violent propensity as an express element of the claim, which is not expressly required in Rhode Island. See, e.g., Saldivar v. Racine, 818 F.3d 14, 21 (1st Cir. 2016); Anderson v. Adam's Mark Hotels & Resorts, 211 F.3d 1277 (table) (10th Cir. 2000); Doe v. Alsaud, 12 F. Supp. 3d 674, 680-81 (S.D.N.Y. 2014); Streppe v. Kmart Stores, 737 N.E.2d 58, 66-67 (Ohio App. Ct. 1999).

[10] The closeness of connection factor weighs against the existence of a duty because the purported sexual assault was an independent and voluntary decision by F.B. See Gushlaw v. Milner, 42 A.3d 1245, 1261-62 (R.I. 2012). That factor, however, is not dispositive, as the other applicable factors support the existence

15

she suffered severe and traumatizing injuries. See R.I. Sch. of Design, 432 F. Supp. 3d at 45. Second, the policy of preventing future harm to other Marriott employees and customers outweighs the burden to Marriott of exercising reasonable care in hiring and supervising employees, particularly regarding supervisors who Marriott knows have a history of sexual misconduct. See id. Moreover, a special relationship existed among the parties, as Marriott employed both F.B. and Ms. Doe. See Santana, 969 A.2d at 658 n.9.

Accordingly, the Court holds that Ms. Doe has alleged sufficient facts to establish Marriott's duties to adequately hire and supervise.

### D. **A Proximate Cause Determination is Not Appropriate at this Stage of the Proceedings**

Unlike duty, the existence of proximate cause ordinarily presents a question of fact. Munroe v. Cheaters Holding Corp., 808 A.2d 645, 646 (R.I. 2002). Proximate cause is "the proximate connection between defendant's negligence and plaintiff's injury." Gray v. Derderian, 365 F. Supp. 2d 218, 229 (D.R.I. 2005) (citing Peycke v. United Elec. Ry. Co., 142 A. 232, 233-34 (R.I. 1928)). It is black letter law that "to gain recovery in a negligence action, a plaintiff must establish . . . proximate cause between

---

of a duty. See Ferreira v. Strack, 636 A.2d 682, 685 (R.I. 1994) (noting that the duty analysis involves "an ad hoc approach considering all relevant factors").

16

the conduct and the resulting injury, and the actual loss or damage." English v. Green, 787 A.2d 1146, 1151 (R.I. 2001) (quoting Jenard v. Halpin, 567 A.2d 368, 370 (R.I. 1989)). A plaintiff must demonstrate "that but for the negligence of the tortfeasor, injury to the plaintiff would not have occurred." Id. (quoting Skaling v. Aetna Ins. Co., 742 A.2d 282, 288 (R.I. 1999)).

However, the Rhode Island Supreme Court has long recognized that an intervening cause may break the causal connection between the defendant's negligent conduct and plaintiff's injuries. Mahogany v. Ward, 17 A. 860, 860-61 (R.I. 1889). "Intervening cause exists when an independent and unforeseeable intervening or secondary act of negligence occurs, after the alleged tortfeasor's negligence, and that secondary act becomes the sole proximate cause of the plaintiff's injuries." Seide v. State, 875 A.2d 1259, 1270 (R.I. 2005) (quoting Contois v. Town of W. Warwick, 865 A.2d 1019, 1027 (R.I. 2004)). The test for determining whether an intervening cause breaks the chain of causation from the initial tortfeasor centers on foreseeability:

> "[A]n intervening act of negligence will not insulate an original tortfeasor if it appears that such intervening act is a natural and probable consequence of the initial tortfeasor's act." "If, however, the intervening cause was not reasonably foreseeable, the intervening or secondary act becomes the sole proximate cause of the plaintiff's injuries."

17

Pantalone v. Advanced Energy Delivery Sys., Inc., 694 A.2d 1213, 1215 (R.I. 1997) (internal citations omitted) (first quoting Walsh v. Israel Couture Post, No. 2274 V.F.W., 542 A.2d 1094, 1097 (R.I. 1988); and then quoting Almeida v. Town of N. Providence, 468 A.2d 915, 917 (R.I. 1983)).

Marriott contends that F.B.'s sexual assault is not reasonably foreseeable as a matter of law because F.B. has no history of violent conduct. See Def.'s Mem. 12. The Court disagrees. The cases that Marriott cites in support of its argument rely on state law that requires a history of prior violence. See, e.g., Saldivar v. Racine, 818 F.3d 14, 21 (1st Cir. 2016) (applying Massachusetts law); Doe v. Alsaud, 12 F. Supp. 3d 674, 680-81 (S.D.N.Y. 2014); Streppe v. Kmart Stores, 737 N.E.2d 58, 66-67 (Ohio App. Ct. 1999). Unlike those states, the Rhode Island Supreme Court has never adopted such an element. Indeed, this Court, in applying Rhode Island law, has suggested that an employer's knowledge of an employee's history of sexual harassment or misconduct can support negligence claims in cases involving sexual assault. See Liu, 36 F. Supp. 2d at 467 ("[The plaintiff] has failed to even allege that there were facts in existence about [the employee] at the time of the hiring which would have given the [employer] a reason to believe that [he] was a sexual harassment risk."); Algarin, 2011 U.S. Dist. LEXIS 66077, at *12 (noting that the plaintiff could not maintain negligence claims

18

against employer because he "does not allege . . . a history of sexual misconduct at the time [the employee] was hired").

Ultimately, the issue of whether F.B.'s conduct was reasonably foreseeable considering his prior record of sexual harassment is a fact question. See Anicich, 852 F.3d at 654-55 (holding that whether a reasonable employer could have foreseen violence based on the employee's non-violent prior misconduct is a fact question). As a result, a determination of this issue is inappropriate at this stage. See Gary v. Derderian, 472 F. Supp. 2d 172, 180-81 (D.R.I. 2007).

**IV. CONCLUSION**

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Marriott's Partial Motion to Dismiss, ECF No. 7. Marriott's Motion is GRANTED with respect to Ms. Doe's claim for negligent training and DENIED with respect to her claims for negligent hiring and supervision.

IT IS SO ORDERED.

/s/ WESmith
William E. Smith
District Judge
Date: May 17, 2024